IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL O. FOSTER,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil No. 12-cv-1172-DRH-CJP |
| | ) |
| **JEFF KORTE,** | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

In 2004, petitioner Michael O. Foster was convicted of two counts of aggravated battery with a firearm and one count of aggravated discharge of a firearm by a jury in St. Clair County, Illinois. He was sentenced to consecutive terms of fifteen years on the aggravated battery counts. No sentence was imposed on the aggravated discharge of a weapon count, as the court found that it merged with the other convictions.

After filing a direct appeal and a state postconviction petition, Foster filed a petition for habeas relief under 28 U.S.C. §2254 (Doc. 1), raising the following grounds:

1. The convictions on two counts of aggravated battery with a firearm violate the state's "one-act, one-crime" rule and due process.

2. Trial counsel was ineffective in failing to interview and present the testimony of alibi witnesses Dianne Foster and Venanita Ursery.

3. Trial counsel was ineffective in failing to impeach state's witness Donna Killion.

4. Trial counsel was ineffective in failing to "illustrate to the jury" that

the victim, Richard Smith, was unable to see who shot him because it was dark.

5. Trial counsel was ineffective in failing to object to leading questions asked by the state's attorney of the state's witnesses.

6. Trial counsel was ineffective in failing to "illustrate to the jury" that witness Tracy Killion gave inconsistent testimony.

7. Trial counsel was ineffective in failing to "illustrate to the jury" that the state did not prove that the light at the crime scene was sufficient for the witnesses to see and identify petitioner as the shooter.

8. Appellate counsel was ineffective in failing to raise the issues set forth above on direct appeal.

## I. Relevant Facts

This summary of the facts is derived from the detailed description by the Appellate Court of Illinois, Fifth District, in its Rule 23 Order affirming the dismissal of petitioner's postconviction petition. A copy of the Rule 23 Order is attached to Doc. 13 as Exhibit 7. The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done. 28 U.S.C. §2254(e).

The victim, Richard Smith, dated Tracy Killion on and off in late 2002. Tracy Killion was the mother of petitioner's children, and she had been involved with petitioner for about ten years. Tracy Killion and petitioner were not living together at the time of the crime.

On December 3, 2002, Tracy Killion and Michael Foster agreed that Foster would take Killion's Saturn car to a repair shop. A friend drove Killion to Richard Smith's house that evening, where she spent the night. At about 5:00 a.m. on

December 4, 2002, Richard Smith drove Killion home as she had to be at work at 7:00 a.m.

> The state court summarized Smith's testimony as follows:
>
> As they stopped in front of Killion's house, Smith saw someone "come off the porch" and he heard Killion say, "There goes Mike." The person ran up to the passenger door of Smith's car and tried to open it. Smith identified this person in court as [petitioner]. Unable to open the car door, [petitioner] began banging away on the windshield. Smith shifted the car into reverse and began backing away. As he did so, he saw [petitioner] holding a gun, saw sparks coming from the gun, and saw his windshield shattering. He heard four or five shots. He did not see anyone else outside of his car. Smith drove to the hospital, where he discovered that he had been shot in the neck and leg. While at the hospital, Smith told police that [petitioner] was the shooter, and he selected [petitioner] from a group of six photos.

Doc. 13, Ex. 7, p. 2.

Tracy Killion testified that she saw her Saturn parked in the driveway as they pulled up, and she assumed that Michael Foster was there. She saw a man run from the porch to the passenger side of Smith's car and try to open the door. She held the door closed. On cross examination, she stated that she never saw the man's face and she simply assumed it was Foster. She also stated that she did not want to testify, but she had been subpoenaed and felt pressured to testify. Ex. 7, pp.3-4.

Petitioner was convicted on all three counts. He filed a pro se post trial motion alleging ineffective assistance by trial counsel. One of his claims was that counsel had failed to interview and subpoena his mother, Dianne Foster, and his sister, Venanita Ursery. The trial court held a hearing. Dianne Foster testified

that petitioner slept at her home on the night of December 2, 2002, and that he left around 6:00 a.m. on December 3, 2002. As petitioner was leaving, he told his mother that he was going to pick Tracy up and take her to work. Ms. Foster also testified that she attended her son's trial, and she never told petitioner's attorney that he had been at her home until 6:00 a.m. on the day of the crime. Doc. 13, Ex. 12, pp. 162-163. Petitioner told the judge that he had been unable to contact his sister, but he made an offer of proof that his sister, Venanita Ursery, would testify that she also slept at Dianne Foster's house on the night of December 2, 2002, and that she woke petitioner up at 5:30 a.m. on December 3, 2002, so that he could drive Tracy to work. Ex. 12, p. 163. Defense counsel told the judge that petitioner did not tell him about his alibi witnesses before or during the trial. Ibid. The judge concluded that petitioner had not made a substantial showing of ineffectiveness of counsel. Ex. 12, p. 164.

## II.   **Appeal and Postconviction Petition**

On direct appeal, Foster raised the following point:

1.   One of petitioner's convictions for aggravated battery with a firearm should be vacated because both convictions arise out of the same act.

See, Doc. 13, Ex. 2, Petitioner's Brief on Direct Appeal.

After his conviction was affirmed, petitioner filed a Petition for Leave to Appeal which raised the above point. Doc. 13, Ex. 6. The Supreme Court denied the PLA. Doc. 13, Ex. 5.

Petitioner filed a pro se postconviction petition. Appointed counsel filed an amended petition raising the one-act, one-crime claim and ineffective assistance of

both trial counsel and counsel on direct appeal. Doc. 13, Ex. 13, p. 24. The trial court dismissed the petition.

On appeal, appointed counsel filed a motion for leave to withdraw. Doc. 13, Ex. 8, p. 5. Petitioner filed a response in opposition. Doc. 13, Ex. 9. The trial court granted the motion to withdraw and dismissed the petition. The Appellate Court affirmed. Doc. 13, Ex. 7, Rule 23 Order on Postconviction Petition.

Foster filed a pro se PLA which raised only two claims:

1. The two convictions for aggravated battery arose out of the same act (rapid shooting of a firearm) and therefore violate the one-act, one-crime rule.

2, Trial counsel was ineffective in failing to interview and subpoena his alibi witnesses.

Doc. 13, Ex. 11.

The Supreme Court denied the PLA. Doc. 13, Ex. 10.

### III. Law Applicable to §2254 Petition

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review. 28 U.S.C. §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000).  A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003).  The unreasonable application standard is "a difficult standard to meet." *Id.*, at 662.  Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.*, at 662 (internal citation omitted).

### IV.    Timeliness, Exhaustion and Procedural Default

Respondent concedes that the petition was timely filed and that petitioner has exhausted state remedies.  Doc. 12, p. 4. He contends that some of petitioner's grounds are procedurally defaulted.

A habeas petitioner must clear two procedural hurdles before the Court

may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), see also 28 U.S.C. §2254(c). Under the Illinois two-tiered appeals process, petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.* at 843-846.

### V. Analysis

**1. Procedurally Defaulted Claims**

Ground 1 is procedurally defaulted insofar as it attempts to set forth a federal due process claim. In state court, petitioner argued only that the two convictions for aggravated battery with a firearm violated the Illinois one-act, one-crime rule because they arose from the same act. He did not make a federal due process argument in state court. He cited only state court cases. And, the state court cases cited by petitioner analyzed only Illinois state law and did not rely on any federal due process analysis. See, Doc. 13, Ex. 2, Petitioner's Brief on Direct Appeal; Ex. 6, PLA; Ex. 11, PLA.

A habeas petitioner must "fairly present" the constitutional basis of his argument at each step of the state process. This requirement is not met if the petitioner's state court pleadings fail to alert the state court "to the federal nature of the claim." *Baldwin v. Reese*, 124 S.Ct. 1347, 1349 (2004), citing *Duncan v. Henry*, 115 S. Ct. 887 (1995). Fair presentment requires "articulating the point in such a way that a judge could grasp both its substance and its foundation in federal law." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006). Here, petitioner presented his one-act, one-crime point as a matter of state law only. The failure to present a due process argument in state court means that his due process argument is procedurally default and cannot be considered here. *Bolton v. Akpore*, 730 F.3d 685, 694-695 (7th Cir. 2013).

Grounds 3 through 7 are procedurally defaulted because they were not raised for one full round of state court review. Although they were raised in petitioner's amended postconviction petition, they were not raised in the PLA.

Grounds 3 through 7 alleged ineffective assistance of trial and appellate counsel. However, the PLA raised only one aspect of trial counsel's performance (failure to interview and subpoena alibi witnesses) and did not mention appellate counsel at all. In order to preserve a claim of ineffective assistance for habeas review, petitioner must present "the specific acts or omissions of counsel" that give rise to the claim. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009). A habeas petitioner is required to present both the facts and the law on which he relies, and "failure to alert the state court to a complaint about one aspect of

counsel's assistance will lead to a procedural default." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).

Petitioner has not demonstrated that there was cause for his procedural default. He filed a reply to the answer at Doc. 21, but does not argue cause for procedural default. And, he has not raised a claim of actual innocence sufficient to overcome his procedural default. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

**2. Non-cognizable state law claim**

The claim that the two convictions for aggravated battery with a firearm violate the one-act, one-crime rule presents a claim of state law only. Petitioner argues that the state court's determination of this issue "was contrary to clearly established state law as determined by the Illinois Supreme Court . . . ." Doc. 1, pp. 29-30.

28 U.S.C. §2254 affords habeas relief only where a petitioner's custody violates *federal* law. *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011), citing *Estelle v. McGuire,* 112 S. Ct. 475, 480 (1991). The Illinois one-act, one-crime rule is a rule of state law. See, *U.S. ex rel. Lindsey v. Camp*, 648 F. Supp. 1089, 1091 (N.D.Ill., 1986), explaining that, "The one-act, one-crime principle, as developed in Illinois courts, is a nonconstitutional rule which prevents more than one criminal conviction for one physical act." Claims of error in the application of state sentencing laws are not cognizable on habeas review. *Dellinger v. Brown*, 301 F.3d 758, 764 (7th Cir. 2002).

### 3. Ineffective Assistance Regarding Alibi Witnesses

Foster did adequately present his claim that trial counsel was ineffective in failing to interview and subpoena his alibi witnesses. This claim was considered by the state court in its Rule 23 Order on his postconviction petition.

In his reply, Doc. 21, petitioner argues that he is entitled to an evidentiary hearing. He cites only pre-AEDPA cases in support, which are no longer good law on this point. Rather, under the current statutory framework, this Court looks only to the record that was before the state court in determining whether the state court's decision was contrary to or an unreasonable application of federal law. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398-1399 (2011).

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Analysis under *Strickland* and on habeas review under §2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). Further, because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Ibid*.

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 104 S. Ct. 2066-2067. In order to be entitled to habeas relief, the petitioner must satisfy both prongs of the *Strickland* analysis. However, there is

no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id*. at 2069.

Under *Strickland's* performance prong, a court enquires into "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* at 791. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 789. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland,* 104 S. Ct. at 2066.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

The Appellate Court correctly identified *Strickland* as the applicable Supreme Court precedent regarding claims of ineffective assistance, and recognized that the *Strickland* two-pronged test requires a showing of both deficient performance by counsel and resulting prejudice. The state court also correctly recognized that petitioner must overcome the strong presumption that counsel's actions constituted sound trial strategy. Ex. 7, p. 9.

The Appellate Court noted that Foster had raised this issue in his pro se motion for a new trial. The trial judge held a hearing at which petitioner claimed he told counsel that his mother and sister could give him an alibi, but counsel denied that Foster ever told him about these witnesses before or at trial. The Appellate Court concluded that the trial judge did not believe that Foster had told his attorney about his alibi witnesses, and it deferred to the trial court's findings of fact and credibility determinations. The Appellate Court concluded that, "Trial counsel cannot be faulted for failing to interview or call witnesses about which he was never informed." Ex. 7, p. 10.

The factual determinations of the state court are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done. 28 U.S.C. §2254(e)(1). In order to rebut the presumption, petitioner must show that "the state court's determination of the facts was unreasonable; identifying conflicting evidence is not enough." *Thompkins v. Pfister*, 698 F.3d 976, 985 (7th Cir. 2012). Therefore, this Court must accept as correct the state court's factual finding that Foster did not tell trial counsel that his mother and sister could

provide him with an alibi.

This Court is mindful that "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014), citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Petitioner does not come close to clearing the bar here.

The state court's decision is a straightforward application of *Strickland*. There is nothing questionable about it, and it therefore does not present grounds for habeas relief. "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013), citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

### VI. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." See, *Slack v. McDaniel*, 120 S.Ct. 1595, 1604

(2000). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court denies a certificate of appealability.

### VII. Conclusion

Michael O. Foster's petition for habeas relief under 28 U.S.C. §2254 **(Doc. 1)** is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: October 24, 2014**

Digitally signed by David R. Herndon
Date: 2014.10.24 16:25:00 -05'00'

**United States District Judge**